******************************************************

The "officially released" date that appears near the be-
ginning of each opinion is the date the opinion will be pub-
lished in the Connecticut Law Journal or the date it was
released as a slip opinion. The operative date for the be-
ginning of all time periods for filing postopinion motions
and petitions for certification is the "officially released"
date appearing in the opinion.

All opinions are subject to modification and technical
correction prior to official publication in the Connecticut
Reports and Connecticut Appellate Reports. In the event of
discrepancies between the advance release version of an
opinion and the latest version appearing in the Connecticut
Law Journal and subsequently in the Connecticut Reports
or Connecticut Appellate Reports, the latest version is to
be considered authoritative.

The syllabus and procedural history accompanying the
opinion as it appears in the Connecticut Law Journal and
bound volumes of official reports are copyrighted by the
Secretary of the State, State of Connecticut, and may not
be reproduced and distributed without the express written
permission of the Commission on Official Legal Publica-
tions, Judicial Branch, State of Connecticut.
******************************************************

KATHLEEN FREESE *v.* DEPARTMENT OF SOCIAL
SERVICES
(AC 38045)

GUSTAV CARIGLIO *v.* DEPARTMENT OF SOCIAL
SERVICES
(AC 38083)

DiPentima, C. J., and Mullins and Flynn, Js.

*Syllabus*

Pursuant to statute (§ 52-109), "[w]hen any action is commenced in the
name of the wrong person as plaintiff, the court may, if satisfied that
it was so commenced through mistake, and that it is necessary for the
determination of the real matter in dispute so to do, allow any other
person to be substituted or added as plaintiff."

The plaintiffs in both actions appealed to the trial court, pursuant to statute
(§ 4-183 [a]), from the decisions of the defendant Department of Social
Services denying the plaintiffs' applications for certain Medicaid bene-
fits, which they had filed on behalf of their mothers, both of whom
died before the defendant rendered final decisions in the underlying
administrative proceedings. The trial court thereafter granted the defen-
dant's motions to dismiss for lack of subject matter jurisdiction and
rendered judgments dismissing both appeals. Thereafter, the plaintiffs
filed separate appeals to this court, which consolidated the appeals.
The trial court had determined that because the plaintiffs' decedents
died before they brought the appeals and because the plaintiffs did not
bring the appeals as executors or administrators of their decedents'
estates, the plaintiffs lacked standing. Moreover, although the plaintiffs
had been appointed as fiduciaries of their decedents' estates after they
instituted the appeals and before the trial court ruled on the defendant's
motions to dismiss, the trial court denied the plaintiffs' requests to cure
the jurisdictional defects pursuant to the remedial statute, § 52-109,
by substituting themselves, in their capacities as estate fiduciaries, as
plaintiffs in the administrative appeals. *Held*:

1. The trial court properly concluded that the plaintiffs lacked standing
to appeal:
a. The plaintiffs' claim that they had standing, pursuant to certain state
regulations (§ 17b-10-1), to assert their decedents' rights in representa-
tive capacities lacked merit, as the plaintiffs' standing to appeal derived
from § 4-183 (a), and the state regulations could not diminish the standing
requirements set forth in § 4-183 or a similar enabling statute (§ 17b-61
[b]), which do not confer standing to appeal to any party eligible to
request a fair hearing, as claimed by the plaintiffs; moreover, although
the plaintiffs cited § 17b-61 (b) as support for their claim that the person
who applied for the fair hearing may appeal from the decision to the
Superior Court, that statute provides that an individual who applies for
a fair hearing may appeal from that decision provided that he or she
also is aggrieved, and it does not diminish the standing requirements
set forth in § 4-183 (a) for filing administrative appeals.
b. The plaintiffs failed to plead facts establishing aggrievement, as the
operative complaints alleged that the defendant prejudiced the rights
of the plaintiffs' decedents by improperly denying the applications, and
the plaintiffs thus failed to allege that they have any specific personal
and legal interests in the decisions to establish their aggrievement and
standing; moreover, the plaintiffs failed to allege facts establishing their
standing to appeal under the right of survival statute (§ 52-599), which
abrogates the common-law rule that causes of action do not survive the
death of a plaintiff, as neither plaintiff commenced their appeal as an
executor or administrator of their decedent's estate, and § 52-599 (b) is
limited to executors or administrators and does not authorize actions
by parties such as next friends, putative administrators, or estate examin-
ers, and, therefore, the plaintiffs failed to plead sufficient facts to estab-
lish aggrievement.

2. The trial court improperly granted the defendants' motions to dismiss

instead of giving the plaintiffs an opportunity to cure the jurisdictional defect by substituting themselves, as fiduciaries of their decedents' respective estates, as plaintiffs in the appeals: that court improperly denied substitution and concluded that the plaintiffs' administrative appeals were not legally cognizable actions capable of being cured by § 52-109 or the right to survival statute (§ 52-599) because they were commenced by parties without authorization to sue and, consequently, were nullities, as the plaintiffs here lacked authority to bring the appeal but did not lack the capacity to sue so as to render their administrative appeals nullities, the mere fact that their action failed to confer jurisdiction on the court did not preclude that jurisdictional defect from being cured through substitution, and adding the plaintiffs here to correct a mistake in ascertaining the real plaintiff in interest did not prejudice the defendant because it was fully apprised of the claims against it and was prepared to defend against them, and the alternative grounds asserted by the defendant regarding why substitution was unavailable were without merit; nevertheless, because the court did not determine whether the failure of the plaintiffs to bring the actions in their capacities as fiduciaries of their decedents' estates was due to an error, misunderstanding or misconception, which is a prerequisite for substitution under § 52-109, the cases were remanded for further proceedings to make such findings and to determine whether substitution is necessary to determine the real matter in dispute.

Argued January 30—officially released August 29, 2017

*Procedural History*

Appeals from the decisions by the defendant denying the plaintiffs' applications for certain benefits, brought to the Superior Court in the judicial district of Middlesex and transferred to the judicial district of New Britain; thereafter, the matters were transferred to the judicial district of Fairfield; subsequently, the court, *Hon. Howard T. Owens, Jr.*, judge trial referee, granted the defendant's motions to dismiss and rendered judgments thereon, from which the plaintiffs filed separate appeals to this court; thereafter, this court consolidated the appeals. *Reversed; further proceedings*.

*Andrew S. Knott*, with whom was *Elizabeth A. Holman*, for the appellants (plaintiff in each case).

*Patrick B. Kwanashie*, assistant attorney general, with whom, on the brief, was *George Jepsen*, attorney general, for the appellee (defendant in both cases).

*Opinion*

FLYNN, J. Our Supreme Court has construed remedial statutes liberally to give effect to their purpose. See *Dorry* v. *Garden*, 313 Conn. 516, 533, 98 A.3d 55 (2014). The plaintiffs, Kathleen Freese and Gustav Cariglio,[1] appeal from judgments of the trial court dismissing their administrative appeals. The principal issue in these cases is whether General Statutes § 52-109,[2] a remedial savings statute, could be utilized by the plaintiffs to save from dismissal their administrative appeals commenced in the names of the wrong persons as plaintiffs.

In these consolidated administrative appeals, the defendant, the Department of Social Services, denied applications for Medicaid benefits that the plaintiffs filed on behalf of their respective mothers, Noreen McCusker and Arlene Cariglio (Arlene), both of whom died before the defendant rendered final decisions in the underlying administrative proceedings. The plaintiffs appealed those denials to the trial court, but because their decedents died before they brought the appeals, and because they did not bring the appeals as executors or administrators of their decedents' estates, the court determined that the plaintiffs lacked standing and dismissed their appeals for lack of subject matter jurisdiction. Furthermore, although the plaintiffs had been appointed as fiduciaries of their decedents' estates after they instituted the appeals and before the court ruled on the defendant's motions to dismiss, the court denied the plaintiffs' requests to cure the jurisdictional defect by substituting themselves, in their capacities as estate fiduciaries, as plaintiffs in the administrative appeals pursuant to the remedial savings statute § 52-109 and the similarly worded rule of practice. See Practice Book § 9-20.

On appeal to this court, the plaintiffs claim that the trial court (1) improperly concluded that they did not have standing to bring their administrative appeals because, despite the fact that they did not bring the appeals as fiduciaries of their decedents' estates, they nonetheless had standing, pursuant to the regulations set forth in the Uniform Policy Manual (UPM); Regs., Conn. State Agencies § 17b-10-1; to assert their decedents' rights in representative capacities, and (2) improperly denied their requests for substitution because, even if they did not have standing initially, they were subsequently appointed as estate fiduciaries and, thus, were entitled to cure the standing problem pursuant to § 52-109 as applied by our Supreme Court in *Kortner* v. *Martise*, 312 Conn. 1, 91 A.3d 412 (2014). Although we agree with the court that the plaintiffs initially lacked standing to commence their appeals in representative capacities, we conclude that the court's stated justifications for denying the plaintiffs' requests for substitution of the fiduciaries of their decedents'

estates were legally incorrect. Because, however, the court did not issue any findings as to whether the plaintiffs' failure to name the proper parties in their administrative appeals was due to a mistake, as is required for substitution to be available under § 52-109, we reverse the court's judgment and remand the case for further proceedings not inconsistent with this opinion.

The facts and procedural history relevant to these appeals are undisputed. Freese applied for Medicaid benefits on behalf of her mother, Noreen McCusker, in October, 2013. On April 27, 2014, before the defendant ruled on the application, McCusker died. Thereafter, the defendant denied Freese's application because McCusker's assets exceeded the limit for eligibility for Medicaid. Acting on her mother's behalf, Freese requested a fair hearing with the defendant's Office of Legal Counsel, Regulations and Administrative Hearings. On September 26, 2014, after conducting the hearing, the Office of Legal Counsel concurred that McCusker's assets rendered her ineligible for Medicaid and denied Freese's appeal. Contesting the merits of that decision, Freese commenced an administrative appeal to the trial court on October 29, 2014. In her complaint, Freese alleged that McCusker's rights were prejudiced because the defendant improperly deprived McCusker of her entitlement to Medicaid benefits. Freese further alleged that she was aggrieved "by virtue of being next friend and putative administrator for [McCusker]." More than one month later, on December 11, 2014, Freese was appointed administratrix of McCusker's estate.

Cariglio's action followed a similar procedural path. Cariglio's mother, Arlene, died on November 4, 2013. Just over one week later, Cariglio applied for Medicaid benefits on Arlene's behalf. The defendant denied Cariglio's application because Arlene had died and because Arlene's assets exceeded the eligibility limit. Cariglio requested a fair hearing and, following the hearing, the Office of Legal Counsel denied Cariglio's appeal on August 12, 2014. Cariglio commenced an administrative appeal in the trial court on September 16, 2014, alleging, in his operative complaint, that Arlene's rights were prejudiced by the defendant's erroneous finding that Arlene was ineligible for benefits. Cariglio further alleged that he brought the appeal in his capacity as Arlene's "co-attorney-in-fact, next friend, and putative coexecutor of [Arlene's] will."[3] With regard to aggrievement, Cariglio alleged that he was aggrieved as Arlene's "estate examiner."[4] Over a month later, on December 3, 2014, Cariglio was appointed as a coexecutor of Arlene's estate.

Around the time when the plaintiffs were appointed as fiduciaries of their decedents' estates, the defendant moved to dismiss the plaintiffs' administrative appeals for lack of subject matter jurisdiction. In both motions,

the defendant argued that the plaintiffs lacked standing to appeal from the denials of their Medicaid applications because they were not personally aggrieved by the denials and, furthermore, did not institute the appeals as administrators or executors of their decedents' estates. In response, the plaintiffs filed motions to substitute themselves, in their newly-obtained capacities as fiduciaries of their respective decedents' estates, as party plaintiffs in order to cure any jurisdictional defects. The plaintiffs both asserted that they commenced their appeals "based on a good-faith belief, not being the result of negligence," that they were the proper parties to appeal. The plaintiffs also requested leave to amend their complaints to that effect.[5] In their objections to the defendant's motions to dismiss, the plaintiffs argued that, on the basis of *Kortner* v. *Martise*, supra, 312 Conn. 1, substitution of an estate fiduciary as a plaintiff to cure a defect in standing is warranted under § 52-109 where, as in their cases, the original action was mistakenly brought in the name of an unauthorized party. Alternatively, the plaintiffs argued that, pursuant to the regulations set forth in the UPM, they had representative standing to appeal on their decedents' behalves despite the fact that, when they commenced their appeals, they had not yet been appointed as fiduciaries of their decedents' estates.

After hearing argument on May 12, 2015, and ordering supplemental briefing, the court issued memoranda of decision dismissing the plaintiffs' appeals. With regard to Freese, the court began by distinguishing her case from our Supreme Court's decision in *Kortner* v. *Martise*, supra, 312 Conn. 14, reasoning that, under *Kortner*, "substitution is permissible . . . only if the decedent had a colorable claim of injury during his life that is a real matter in dispute . . . such that the decedent had standing to bring the action himself," whereas McCusker died before Freese commenced her administrative appeal and, therefore, "ha[d] neither a vindicable right nor a colorable claim of injury that the action implicates." The court further observed that, because Freese's appeal was not commenced by an executor or administrator of McCusker's estate, it was incapable of being cured by substitution: "Being a nullity and incapable of vesting the court with subject matter jurisdiction over any controversy, a suit initiated by a decedent or his heir, or by another on their behalf, cannot be an action within the meaning of § 52-109, that section contemplating a legally cognizable right of action. Further, substitution under § 52-109 cannot retroactively validate such a suit."[6] Accordingly, the court determined that *Kortner* was inapposite, declined to permit substitution, and dismissed Freese's appeal for lack of subject matter jurisdiction. In denying substitution, the court did not determine whether Freese's failure to appeal in her capacity as administratrix of McCusker's estate was the result of a mistake. See General Statutes § 52-

109 (substitution appropriate only if trial court is satisfied that original action was commenced in name of improper party through mistake).

In its memorandum of decision dismissing Cariglio's appeal, the court reasoned that, to have standing to appeal, Cariglio was required to commence the appeal in his capacity as a fiduciary of Arlene's estate, and that Cariglio's operative complaint failed to allege that he brought his appeal in such a capacity. The court also rejected Cariglio's argument that his appeal could be saved by § 52-109 or General Statutes § 52-599,[7] reasoning that, because the appeal failed to invoke the court's jurisdiction in the first place, "there [was] no cause or right of action to save." Furthermore, the court concluded that Cariglio failed to plead aggrievement, as is required to have standing to appeal from an administrative decision. See General Statutes § 4-183 (a). Thus, the court declined to permit substitution and dismissed Cariglio's administrative appeal for lack of subject matter jurisdiction.[8] As in Freese's case, the court did not determine whether Cariglio failed to appeal as coexecutor of Arlene's estate due to a mistake. These consolidated appeals followed.

The plaintiffs claim that court improperly granted the defendant's motions to dismiss for lack of subject matter jurisdiction. First, they argue that the court erroneously concluded that they lacked standing to appeal because, pursuant to the regulations set forth in the UPM, they had standing to appeal in representative capacities. Second, the plaintiffs contend that, on the basis of § 52-109 and *Kortner* v. *Martise*, supra, 312 Conn. 1, the court erred in refusing to permit substitution in lieu of dismissing the cases.[9] As set forth subsequently in this opinion, we disagree with the plaintiffs' claim that they had standing to appeal in capacities other than as fiduciaries of their respective decedents' estates. However, we reverse the judgments of dismissal and remand the cases for the court to determine whether the plaintiffs' failure to name the proper parties as plaintiffs in their appeals was due to a mistake and for such further proceedings as are not inconsistent with this opinion.

We begin by setting forth our standard of review. "A determination regarding a trial court's subject matter jurisdiction is a question of law. . . . When the trial court draws conclusions of law, appellate review is plenary, and the reviewing court must decide whether the trial court's conclusions are legally and logically correct." (Internal quotation marks omitted.) *Youngman* v. *Schiavone*, 157 Conn. App. 55, 63, 115 A.3d 516 (2015). Furthermore, "[t]he decision whether to grant a motion for the addition or substitution of a party to legal proceedings rests in the sound discretion of the trial court." (Internal quotation marks omitted.) Id. "[When] a motion to dismiss is filed on the ground that

the plaintiff lacks standing, and the plaintiff quickly follows by filing a motion to substitute the correct party, the motion to substitute may be heard while the motion to dismiss is pending, notwithstanding the general rule that the subject matter jurisdictional issues raised by a motion to dismiss must be dealt with prior to other motions." (Internal quotation marks omitted.) Id.

I

The plaintiffs first argue that the court erroneously concluded that they lacked standing to appeal from the defendant's denials of their Medicaid applications because the UPM conferred them with standing to assert their decedents' rights in representative capacities. We disagree.

"It is well established that the right to appeal an administrative action is created only by statute and a party must exercise that right in accordance with the statute in order for the court to have jurisdiction." *New England Rehabilitation Hospital of Hartford, Inc.* v. *Commission on Hospitals & Health Care*, 226 Conn. 105, 120, 627 A.2d 1257 (1993). In the present cases, the plaintiffs appealed pursuant to § 4-183 (a), which provides in relevant part that "[a] person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section." See also General Statutes § 17b-61 (b) (providing that "[t]he applicant for [a fair] hearing, if aggrieved, may appeal therefrom in accordance with section 4-183").

Therefore, "in order to have standing to bring an administrative appeal, a person or entity must be aggrieved. . . . Aggrievement is a question of fact for the trial court and the plaintiff has the burden of proving that fact. . . . Pleading and proof of facts that constitute aggrievement are essential prerequisites to the trial court's subject matter jurisdiction over an administrative appeal. . . . In the absence of aggrievement, an administrative appeal must be dismissed for lack of subject matter jurisdiction." (Citations omitted.) *New England Rehabilitation Hospital of Hartford, Inc.* v. *Commission on Hospitals & Health Care*, supra, 226 Conn. 120–21.

"[T]he fundamental test for determining aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision . . . ." (Internal quotation marks omitted.)

*New England Cable Television Assn., Inc.* v. *Dept. of Public Utility Control*, 247 Conn. 95, 103, 717 A.2d 1276 (1998).

Before reaching the question of aggrievement under § 4-183 (a), we reject the plaintiffs' central contention that the UPM conferred them with standing to commence their administrative appeals in representative capacities. In essence, the plaintiffs' argument is that they need not establish aggrievement under § 4-183 (a) provided that they had standing under the UPM. It is well settled, however, that "[a]ppeals to the courts from administrative [agencies] exist only under statutory authority . . . . Appellate jurisdiction is derived from the . . . statutory provisions by which it is created . . . and can be acquired and exercised only in the manner prescribed. . . . In the absence of statutory authority, therefore, there is no right of appeal from [an agency's] decision . . . ." (Internal quotation marks omitted.) *Cales* v. *Office of Victim Services*, 319 Conn. 697, 700–701, 127 A.3d 154 (2015). Therefore, the plaintiffs' standing to appeal from the defendant's denials of their Medicaid applications is derived solely from §§ 4-183 (a) and 17b-61 (b), and unless the plaintiffs established the prerequisites to standing as required by those sections, namely, aggrievement, their appeals are subject to dismissal. The regulations set forth in the UPM, promulgated by the defendant pursuant to General Statutes § 17b-10 (a), cannot diminish the standing requirements set forth in the enabling statutes. Indeed, the plaintiffs' contention is that, under the UPM, any party eligible to request a fair hearing also has standing to appeal to the trial court. The enabling statutes, however, do not confer standing under such circumstances. "[M]ere status . . . as a party or a participant in a hearing before an administrative agency does not in and of itself constitute aggrievement for the purposes of appellate review." (Internal quotation marks omitted.) *Med-Trans of Connecticut, Inc.* v. *Dept. of Public Health & Addiction Services*, 242 Conn. 152, 169, 699 A.2d 142 (1997). Because the plaintiffs' claim that the UPM conferred them with standing would require us to depart from the enabling statutes, their reliance on the UPM is without merit.

The plaintiffs do, however, cite one of the enabling statutes—§ 17b-61 (b)—as support for their argument that "the person who applied for the [f]air [h]earing may appeal the decision to the Superior Court." Section 17b-61 (b), which governs standing to appeal from decisions rendered after administrative hearings, provides in relevant part: "The applicant for such a hearing, *if aggrieved*, may appeal therefrom in accordance with section 4-183. . . ." (Emphasis added.) Contrary to the plaintiffs' interpretation, the plain text of that statute provides that an individual who applies for a fair hearing may appeal from that decision *provided that he or she also is aggrieved*. The plaintiffs' construction ignores

the phrase "if aggrieved," in violation of the principle that statutes "must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant . . . ." (Internal quotation marks omitted.) *Marchesi* v. *Board of Selectmen*, 309 Conn. 608, 615, 72 A.3d 394 (2013). Therefore, § 17b-61 (b) does not diminish the standing requirements set forth in § 4-183 (a) for filing administrative appeals, and does not help the plaintiffs' cause.

Having rejected the plaintiffs' primary argument on appeal, namely, that the UPM could confer them with authority to appeal to the Superior Court, we next conclude that the plaintiffs failed to plead facts establishing aggrievement.[10] In their operative complaints, the plaintiffs allege that they applied for Medicaid benefits on behalf of their decedents, and that the defendant prejudiced their decedents' rights by improperly denying the applications. Therefore, despite the plaintiffs' alleged participation in the underlying proceedings and disagreement with the merits of the administrative decisions, they have failed to allege that they have any specific personal and legal interests in the decisions. See *New England Cable Television Assn., Inc.* v. *Dept. of Public Utility Control*, supra, 247 Conn. 103. On that basis, the plaintiffs were not aggrieved and, thus, lacked standing to commence these appeals.

Nor did the plaintiffs allege facts establishing their standing to appeal under our right of survival statute, § 52-599, which abrogates the common law rule that causes of action do not survive the death of a plaintiff. See *Burton* v. *Browd*, 258 Conn. 566, 570–71, 783 A.2d 457 (2001). Under § 52-599, causes of action survive the death of a plaintiff, but only in favor of the plaintiff's "executor or administrator . . . ." See General Statutes § 52-599 (b).[11] "It is a well established principle . . . that [d]uring the interval . . . between the death and the revival of the action [pursuant to § 52-599] by the appearance of the executor or administrator, the cause has no vitality. The surviving party and the court alike are powerless to proceed with it." (Internal quotation marks omitted.) *Burton* v. *Browd*, supra, 571. Limiting § 52-599 to suits brought by the decedent's executor or administrator accords with the established principle that "[t]he proper suit, upon a cause of action arising in favor of . . . the decedent during [his or her] lifetime, is in the name of the fiduciary [of the estate] rather than of the heirs or other beneficiaries of the estate." (Internal quotation marks omitted.) *Geremia* v. *Geremia*, 159 Conn. App. 751, 781, 125 A.3d 549 (2015); see also 31 Am. Jur. 2d 746, Executors and Administrators § 1093 (2012) ("the exclusive right to bring action in behalf of an estate . . . is the legal representative of the estate; the heirs have no standing to maintain such an action" [footnote omitted]).

In the present case, neither plaintiff commenced their

appeal as an executor or administrator of their decedent's estate; indeed, it is undisputed that they were not appointed into those capacities until December, 2014, after they instituted the appeals. Instead, Freese alleged that she was aggrieved as McCusker's "next friend and putative administrator," and Cariglio alleged that he was aggrieved as Arlene's "estate examiner." Because § 52-599 limits its ambit to executors or administrators, it does not authorize suits by parties such as next friends, putative administrators, or estate examiners. Accordingly, the plaintiffs failed to plead sufficient facts to establish aggrievement, and the court properly concluded that they lacked standing to appeal.[12]

We nonetheless find it appropriate to note that, in terms of whether a party authorized to participate in the administrative proceedings also is authorized to bring an administrative appeal, certain regulations in the UPM leave some room for confusion. For instance, § 1505.15 (A) (1) of the UPM permits applicants to be "represented by other qualified individuals who act responsibly for them," and § 1570.05 (D) (2) (b) provides that, in the case of a deceased applicant, their child may request a fair hearing on their behalf. Finally, § 1570.30 (A) of the UPM provides that "[t]he requester has the right to appeal a [f]air [h]earing decision to the court of jurisdiction." Taken together, we can see how litigants might be misled into thinking that they are authorized to file administrative appeals from fair hearing decisions simply because they were the person to request the fair hearing. Fair hearing applicants who mistakenly rely on these provisions of the UPM as conferring them with standing may be induced into failing to take the necessary measures to establish aggrievement under § 4-183, such as obtaining appointment as fiduciary of their decedent's estate, which could harm their ability to assert the rights of their decedents in administrative appeals. It would be prudent for the defendant to amend the relevant regulations of the UPM to provide a clear indication that none of them diminishes the aggrievement requirements set forth in § 4-183.

Regardless of their lack of clarity, however, the UPM regulations cannot, as we have stated, enlarge the class of persons eligible to file an administrative appeal beyond those qualifying as aggrieved persons under § 4-183 (a). See *Cales* v. *Office of Victim Services*, supra, 319 Conn. 700–701. Because the plaintiffs failed to allege that they were aggrieved, they lacked standing to appeal.

## II

Having determined that the plaintiffs failed to plead sufficient facts to establish that they had standing to commence their administrative appeals, we must next determine whether the court erred by granting the defendant's motions to dismiss instead of giving the plaintiffs an opportunity to cure the jurisdictional defect

by substituting themselves, as fiduciaries of their decedents' respective estates, as plaintiffs in the appeals. We conclude that the court's stated justifications for denying substitution are legally incorrect, and that the alternative grounds asserted by the defendant regarding why substitution was unavailable are without merit. Because, however, the court did not determine whether the plaintiffs' failure to sue in their capacities as fiduciaries of their decedents' estates was due to a mistake, which is a prerequisite for substitution under § 52-109, we remand the case for a further finding and for further proceedings not inconsistent with this opinion.

"The decision whether to grant a motion for the addition or substitution of a party to legal proceedings rests in the sound discretion of the trial court. . . . In reviewing the trial court's exercise of that discretion, every reasonable presumption should be indulged in favor of its correctness . . . and only if its action discloses a clear abuse of discretion is our interference warranted." (Internal quotation marks omitted.) *Youngman* v. *Schiavone*, supra, 157 Conn. App. 65.

Section 52-109 provides: "When any action has been commenced in the name of the wrong person as plaintiff, the court may, if satisfied that it was so commenced through mistake, and that it is necessary for the determination of the real matter in dispute so to do, allow any other person to be substituted or added as plaintiff." Section 52-109 "allow[s] a substituted plaintiff to enter a case [w]hen any action has been commenced in the name of the wrong person as [the] plaintiff, and that such a substitution will relate back to and correct, retroactively, any defect in a prior pleading concerning the identity of the real party in interest. . . . Thus, a substitution of a real party in interest as the plaintiff cures the lack of standing of the original plaintiff . . . and, further, is permissible even after the statute of limitations has run. . . . An addition or substitution is discretionary, but generally should be allowed when, due to an error, misunderstanding or misconception,[13] an action was commenced in the name of the wrong party, instead of the real party in interest, whose presence is required for a determination of the matter in dispute." (Citations omitted; footnotes altered; internal quotation marks omitted.) *Fairfield Merrittview Ltd. Partnership* v. *Norwalk*, 320 Conn. 535, 552–53, 133 A.3d 140 (2016).

Once the trial court determines that the action was commenced in the name of the wrong party due to an error, misunderstanding or misconception, "the substituted party is let in to carry on a pending suit, and is not regarded as commencing a new one. After he is substituted he is . . . treated and regarded for most purposes just as if he had commenced the suit originally. The writ, the complaint, the service of process, attachment made, bonds given, the entry of the case in

court, the pleadings if need be, in short all things done in the case by or in favor of the original plaintiff . . . remain for the benefit of the plaintiff who succeeds him, as if done by and for him originally and just as if no change of parties had been made. So far as the defendant is concerned, the same suit upon the same cause of action, under the same complaint and pleadings substantially in most cases, goes forward to its final and legitimate conclusion as if no change had been made." (Internal quotation marks omitted.) *Kortner* v. *Martise*, supra, 312 Conn. 12–13. "[W]hen a plaintiff is added to the case to correct a mistake in ascertaining the real plaintiff in interest, the defendant rarely, if ever, will be prejudiced, as long as he was fully apprised of the claims against him and was prepared to defend against them." *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, 297 Conn. 105, 158, 998 A.2d 730 (2010).

Finally, we must bear in mind that "remedial statutes must be afforded a liberal construction in favor of those whom the legislature intended to benefit." (Internal quotation marks omitted.) *Dorry* v. *Garden*, supra, 313 Conn. 533. Our rules with respect to substitution are no different—they "permit the substitution of parties as the interest of justice require"; (internal quotation marks omitted) *Kortner* v. *Martise*, supra, 312 Conn. 11; and "are to be construed so as to alter the harsh and inefficient result that attached to the mispleading of parties at common law." (Internal quotation marks omitted.) Id.

In the present cases, the trial court did not determine whether the plaintiffs' failure to name the proper parties in their appeals was due to a mistake. Instead, the trial court's principal reason for denying substitution appears to have been that the plaintiffs' administrative appeals were not legally cognizable actions capable of being cured by § 52-109 or our right of survival statute, § 52-599 (b), because they were commenced by parties without authorization to sue and, consequently, were nullities. In its memorandum of decision dismissing Freese's case, the court stated that, "[b]eing a nullity and incapable of vesting the court with subject matter jurisdiction over any controversy, a suit initiated by a decedent or his heir, or by another on their behalf, cannot be an action within the meaning of § 52-109, that section contemplating a legally cognizable right of action. Further, substitution under § 52-109 cannot retroactively validate such a suit." Likewise, with regard to Cariglio, the court observed that, although "§ 52-109 permit[s] substitution of a proper party for the plaintiff in any action mistakenly commenced in the name of the wrong person and § 52-599 (b) permits a civil action or proceeding by or against any party who dies during the pendency of the action to be continued by or against the decedent's executor or administrator, neither statute can save an unauthorized suit, there being no cause or right of action to save."

This reasoning is flawed on two levels. First, although the plaintiffs lacked authority to bring these appeals on their decedents' behalves, they did not, as the trial court suggested, lack the capacity to sue so as to render their administrative appeals nullities. "It is elemental that in order to confer jurisdiction on the court the plaintiff must have an actual legal existence, that is he or it must be a person in law or a legal entity with legal capacity to sue." (Internal quotation marks omitted.) *Coldwell Banker Manning Realty, Inc.* v. *Cushman & Wakefield of Connecticut, Inc.*, 136 Conn. App. 683, 687, 47 A.3d 294 (2012). For instance, "[t]he quintessential example of someone who lacks capacity to sue . . . is a deceased person, as capacity only exists in living persons." *In re Estate of Sauers*, 613 Pa. 186, 198, 32 A.3d 1241 (2011); see also *Noble* v. *Corkin*, 45 Conn. Supp. 330, 333, 717 A.2d 301 (1998) ("[a] dead person is a nonexistent entity and cannot be a party to a suit" [internal quotation marks omitted]). Likewise, "[a]n estate is not a legal entity. It is neither a natural nor artificial person, but is merely a name to indicate the sum total of the assets and liability of the decedent or incompetent. . . . Not having a legal existence, it can neither sue nor be sued." (Citation omitted; internal quotation marks omitted.) *Isaac* v. *Mount Sinai Hospital*, 3 Conn. App. 598, 600, 490 A.2d 1024, cert. denied, 196 Conn. 807, 494 A.2d 904 (1985). In the present cases, however, the plaintiffs did not commence their appeals in the names of their decedents or their decedents' estates; rather, they sued in their own names. Although the plaintiffs were not authorized, and thus lacked standing, to appeal in their own names, they were nonetheless living persons with capacity to sue. See 67A C.J.S. 524–25, Parties § 10 (2013) ("[i]n general, every natural person of lawful age has legal capacity to sue"). Accordingly, the trial court was incorrect to posit that the plaintiffs' appeals were nullities.

Second, even if the plaintiffs' appeals were nullities, the mere fact that an action fails to confer jurisdiction on the court does not preclude that jurisdictional defect from being cured through substitution. "[I]f § 52-109 is to have the ameliorative purpose for which it was intended, then even assuming that the specter of subject matter jurisdiction rears its head, the statute is meant to give the trial courts jurisdiction for the limited purpose of determining if the action should be saved from dismissal by the substitution of plaintiffs. . . . The legislature's provision of this statutory remedy would be completely undermined by any rule requiring the immediate dismissal for lack of subject-matter jurisdiction of any action commenced in the name of the wrong person as plaintiff. The statute, as an exercise of the legislature's constitutional authority to determine [our court's] jurisdiction . . . must be seen as an extension of that jurisdiction for the limited purpose of deciding a proper motion to substitute." (Citations omitted; inter-

nal quotation marks omitted.) *Youngman* v. *Schiavone*, supra, 157 Conn. App. 64.

Put simply, substitution is available to cure lawsuits that, like the present cases, were commenced by unauthorized parties. Our Supreme Court recognized this in *Kortner* v. *Martise*, supra, 312 Conn. 1, in which the plaintiff, in her capacity as conservator of Caroline Kortner's person, commenced a tort action against the defendant, asserting that the defendant committed a variety of torts against Kortner. Id., 8. Kortner died after the action was commenced, the plaintiff was appointed administratrix of her estate, and the trial court granted the plaintiff's motion to substitute herself as administratrix as the plaintiff in the action. Id., 11. On appeal, the Supreme Court sua sponte ordered the parties to brief the issue of whether the plaintiff lacked standing to sue as conservator of Kortner's person. Id., 9 and n.7. The court concluded that, "even assuming, arguendo, that the plaintiff did not have standing to bring the claim when she commenced the action . . . any defect was cured when she, as administratrix of [Kortner's] estate, was substituted as the plaintiff . . . and that substitution related back to the commencement of the action." Id., 14. By permitting substitution to cure the alleged jurisdictional defect, the court implicitly recognized in *Kortner* that substitution under § 52-109 is not categorically unavailable to cure lawsuits commenced by unauthorized parties.

We also do not agree with the trial court's reasoning in its memorandum of decision dismissing Freese's appeal that substitution would prejudice the defendant because it would permit Freese to avoid the forty-five day limitation period for filing administrative appeals. Our case law recognizes that "[w]hen a plaintiff is added to the case to correct a mistake in ascertaining the real plaintiff in interest, the defendant rarely, if ever, will be prejudiced, as long as he was fully apprised of the claims against him and was prepared to defend against them." *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, supra, 297 Conn. 158. Additionally, "substitution of a real party in interest as the plaintiff cures the lack of standing of the original plaintiff . . . and, further, is permissible even after the statute of limitations has run." (Citation omitted; internal quotation marks omitted.) *Fairfield Merrittview Ltd. Partnership* v. *Norwalk*, supra, 320 Conn. 553. Here, Freese brought her administrative appeal on October 29, 2014, within the forty-five day limitation period, and her pleadings fully apprised the defendant of the claims she was raising. Thus, it is difficult to discern the way in which the defendant would be prejudiced by substitution.

The defendant advances additional arguments as to why substitution was unavailable. The defendant argues that administrative appeals are not "actions" eligible to

be cured under the provisions of § 52-109, and that there was not a sufficient identity of interest between the originally named plaintiffs and the plaintiffs in their capacities as estate fiduciaries. Moreover, the defendant argues that, in light of *Kortner* v. *Martise*, supra, 312 Conn. 14, substitution was unavailable in the plaintiffs' cases because the plaintiffs' decedents were deceased by the time the defendant issued appealable administrative decisions and, therefore, did not have standing in their own right to bring the appeals.

We turn first to the defendant's argument that the plaintiffs' administrative appeals are not "actions" for purposes of § 52-109. That section provides: "When any *action* has been commenced in the name of the wrong person as plaintiff, the court may, if satisfied that it was so commenced through mistake, and that it is necessary for the determination of the real matter in dispute so to do, allow any other person to be substituted or added as plaintiff." (Emphasis added.) Section 52-109 thus requires that, in order to fall within the statute's saving grace, a case must be an "action." As support for its argument, the defendant cites to *Carbone* v. *Zoning Board of Appeals*, 126 Conn. 602, 13 A.2d 462 (1940), *Bank Building & Equipment Corp. of America* v. *Architectural Examining Board*, 153 Conn. 121, 214 A.2d 377 (1965), and *Chieppo* v. *Robert E. McMichael, Inc.*, 169 Conn. 646, 363 A.2d 1085 (1975), none of which deal with § 52-109 at issue here.

In *Carbone* v. *Zoning Board of Appeals*, supra, 126 Conn. 602, writing for our Supreme Court, Justice Maltbie, with logic and brevity worthy of Tacitus, observed that, as used in our General Statutes, "the word 'action' has no precise meaning and the scope of proceedings which will be included within the term as used in the statutes depends upon the nature and purpose of the particular statute in question." Id., 605. In deciding that an appeal from a zoning board was not an "action" for purposes of the accidental failure of suit statute, General Statutes § 52-592 (then codified as General Statutes [1930 Rev.] § 6024), the court held that statutory actions and special laws that fix a rather brief time in which appeals may be taken to the courts from the order and decisions of administrative boards, and that make it possible to proceed in the matter as soon as the time to take an appeal has passed if one has not been filed, were unsuited to be considered "actions" that could be saved under the one year recommencement provision of the accidental failure of suit statute. Id., 607. The court stated that "[t]o hold that an appeal in such a proceeding as the one before us is an 'action' within the meaning of [the accidental failure of suit statute] would have the practical effect of eliminating the time factor in taking such appeals." Id.

We see important distinctions between the present cases and *Carbone*. The *Carbone* court wisely ruled

that a fifteen day appeal period could not be extended to one year under the accidental failure of suit statute because the short fifteen day appeal period had been established by the legislature, rather than rule of the court, so that persons who might have received an approval of a zoning application could proceed with a project and so that public officials charged with issuing permits could issue them knowing that no appeal had been taken in the fifteen day period permitted. We see no such imperative here. Under § 4-183, the appeal statute in the present cases, the appeal period is forty-five days, three times longer than the time within which zoning appeals must be taken.[14] Unlike *Carbone*, there is no similar need to "proceed in the matter as soon as the time to take an appeal has passed if one has not been filed." *Carbone* v. *Zoning Board of Appeals*, supra, 126 Conn. 607. Moreover, unlike *Carbone*, the remedial statute involved here is § 52-109.

In *Bank Building & Equipment Corp. of America* v. *Architectural Examining Board*, supra, 153 Conn. 121, also relied upon by the defendant, the statute involved was General Statutes (Cum. Supp. 1965) § 20-289, which governed appeals from orders of the Architectural Examining Board and provided that such appeals must be taken within thirty days of the date of an order. Id., 123. Rejecting the plaintiffs' request to overrule *Carbone*, the court determined that an appeal under § 20-289 was not an "action" for purposes of the accidental failure of suit statute, § 52-592, or a "civil action" under General Statutes § 52-593, which provides that a plaintiff in "any civil action" who fails to obtain a judgment by reason of failure to name the right person as defendant may bring a new action even if the statute of limitations had expired. Id., 124. In reaching this conclusion, the court found it "significant that § 20-289, in authorizing appeals from the defendant board, requires that the citation be 'signed by the same authority' and that the appeal be 'returnable at the same time and served and returned in the same manner as is required in the case of a summons in a civil action.' . . . The steps prescribed in § 20-289 are easily understood. It is apparent from the language used that the General Assembly intended to set forth a procedure distinct from the ordinary concept of a civil action."[15] (Citation omitted.) Id., 125. By contrast, § 4-183 does not set forth any procedure distinct from the procedure used to bring an ordinary civil action.[16]

The defendant also argues that *Chieppo* v. *Robert E. McMichael, Inc.*, supra, 169 Conn. 646, supports the proposition that the present administrative appeals are not actions under § 52-109. *Chieppo*, however, also has factual distinctions from the present cases. *Chieppo* dealt with a workers' compensation appeal pursuant to General Statutes (Rev. to 1975) § 31-301 (a), which, at that time, provided for a very limited ten day appeal period within which it might be brought. An employer

whose appeal had been dismissed because it had been brought in the wrong court sought to transfer the matter to the proper court pursuant to General Statutes (Rev. to 1975) § 52-32. Id., 648–49. Because the purpose of the workers' compensation act was to provide a prompt, effective means of compensating injured workers for related expenses, it was not deemed a "civil action" for purposes of § 52-32. Id., 653–54. Given the much shorter ten day window for filing an appeal in *Chieppo*, and the obvious legislative purpose of the workers' compensation statutes to ensure that injured workers were provided with a prompt remedy in lieu of their right to sue their employer or negligent fellow worker, the ruling that such appeals are not ordinary civil actions was consistent with the framework that Chief Justice Maltbie's opinion in *Carbone* v. *Zoning Board of Appeals*, supra, 126 Conn. 602, used to decide whether a particular case was a civil action eligible to be saved by a remedial statute, namely, analysis of the nature and purpose of the particular statute in question.

For these reasons, we do not find *Carbone*, *Bank Building & Equipment Corp. of America* or *Chieppo* persuasive for purposes of determining whether administrative appeals under § 4-183 are "actions" that are salvageable under § 52-109. We conclude that substitution is available under § 52-109 to cure an administrative appeal commenced in the name of an improper party due to a mistake.[17]

The defendant also claims that substitution was unavailable because there is an insufficient identity of interest between the plaintiffs in their purported capacities as next of friend, putative administrator, and estate examiner, and the plaintiffs in their capacities as fiduciaries of their decedents' estates. The defendant grounds this argument in the assertion that, "whereas the plaintiffs claim to represent the decedents' interest, the estate fiduciaries represent the decedents' creditors' interest, and, though related, the two sets of interests do not coincide." We disagree. The pleadings in the present cases do not reflect that the plaintiffs, as estate fiduciaries, represent the interests of the decedents' creditors rather than the decedents' interests. To the contrary, the plaintiffs filed proposed amended complaints in conjunction with their requests for substitution in which they both alleged that the rights *of their decedents* were prejudiced by the defendant's erroneous denials of their Medicaid applications. Thus, whether suing in the unauthorized capacities of next of friend, putative administrator or estate examiner, or in their proper capacities as estate fiduciaries, the plaintiffs sought the very same thing—to vindicate their decedents' rights to Medicaid benefits. Accordingly, there is no identity of interest impediment to substitution.

Finally, we do not agree with the defendant's reading

of *Kortner* as holding that, for substitution to be appropriate, the decedent must have been alive at the time the original action was commenced. The defendant relies on the specific language from *Kortner* in which our Supreme Court cautioned that its decision that substitution was available was "not meant to suggest that any person who is appointed an administrator of an estate becomes a proper party to any claim. As § 52-109 requires, the substitution of an administrator of an estate 'is necessary for the determination of the real matter in dispute . . . .' *In the present case, it is clear that* [*Kortner*] *herself had a colorable claim of injury, therefore, the substitution of the plaintiff, as administratrix of the estate, cured any possible jurisdictional defect.*" (Emphasis added.) *Kortner* v. *Martise*, supra, 312 Conn. 14. We do not read this portion of *Kortner* as categorically barring substitution under § 52-109 in every situation in which the decedent predeceases the commencement of the original action. Rather, the court merely was observing that the decedent in *Kortner* had standing by virtue of the fact that she suffered a personal, particularized injury. Similarly, the decedents in the present cases suffered personal legal injuries as a result of the defendant's denials of their Medicaid applications. The defendant's reading of *Kortner* would effectively undermine the remedial purpose of § 52-109.

Because the trial court did not issue findings as to the prerequisites for substitution under § 52-109, we conclude, consistent with *Allied Associates* v. *Q-Tran, Inc.*, 165 Conn. App. 239, 245, 138 A.3d 1104 (2016), that the judgment of dismissal must be reversed and the case remanded to the trial court for further findings. Specifically, the court must determine, in each plaintiff's case, whether (1) the plaintiff's failure to name the estate fiduciaries as plaintiffs was the result of a mistake, that is, an error, misunderstanding or misconception, and (2) whether substitution is necessary to determine the real matter in dispute. See General Statutes § 52-109.

The judgments are reversed and the cases are remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

[1] We refer to Freese and Cariglio collectively as the plaintiffs throughout this opinion, distinguishing between them only where necessary to avoid confusion.

[2] General Statutes § 52-109 provides: "When any action has been commenced in the name of the wrong person as plaintiff, the court may, if satisfied that it was so commenced through mistake, and that it is necessary for the determination of the real matter in dispute so to do, allow any other person to be substituted or added as plaintiff."

[3] Cariglio alleged that Arlene left a will that designated him and his brother Pasquale Cariglio "as coexecutors," and that the will was "in the process" of being admitted into probate.

[4] Cariglio's reference to his status as "estate examiner" appears to be a reference to General Statutes § 45a-317a, which provides in relevant part: "Any person interested in the estate of a deceased person and having a

need to obtain financial information concerning the deceased person for the limited purpose of determining whether the estate may be settled as a small estate under section 45a-273, or having a need to obtain financial or medical information concerning the deceased person for the limited purpose of investigating a potential cause of action of the estate, surviving spouse, children, heirs or other dependents of the deceased person, or a potential claim for benefits under a workers' compensation act, an insurance policy or other benefits in favor of the estate, surviving spouse, children, heirs or other dependents of the deceased person, may apply to the Probate Court having jurisdiction of the estate of the deceased person for the appointment of an estate examiner. . . . If the court appoints an estate examiner under this section, the court may require a probate bond or may waive such bond requirement. The court shall limit the authority of the estate examiner to disclose the information obtained by the estate examiner, as appropriate, and may issue an appropriate order for the disclosure of such information. Any order appointing an estate examiner under this section, and any certificate of the appointment of a fiduciary issued by the clerk of the court, shall indicate (1) the duration of the estate examiner's appointment, and (2) that such estate examiner has no authority over the assets of the deceased person."

[5] Freese's proposed amended complaint alleged that she was aggrieved "by virtue of being administratrix of estate for [McCusker]." Cariglio's proposed second amended complaint alleged that he and Pasquale Cariglio were aggrieved "by virtue of being the coexecutors of estate for [Arlene]."

[6] The court further reasoned that permitting substitution in Freese's action would prejudice the defendant because it would permit Freese to avoid the forty-five day limitation period for filing administrative appeals. See General Statutes § 4-183 (c).

[7] General Statutes § 52-599 provides in relevant part: "(a) A cause or right of action shall not be lost or destroyed by the death of any person, but shall survive in favor of or against the executor or administrator of the deceased person.

"(b) A civil action or proceeding shall not abate by reason of the death of any party thereto, but may be continued by or against the executor or administrator of the decedent. If a party plaintiff dies, his executor or administrator may enter within six months of the plaintiff's death or at any time prior to the action commencing trial and prosecute the action in the same manner as his testator or intestate might have done if he had lived. If a party defendant dies, the plaintiff, within one year after receiving written notification of the defendant's death, may apply to the court in which the action is pending for an order to substitute the decedent's executor or administrator in the place of the decedent, and, upon due service and return of the order, the action may proceed. . . ."

[8] In both memoranda of decision, the court did not address the plaintiffs' alternative arguments that they had representative standing to appeal pursuant to the UPM.

[9] The plaintiffs also argue that, by failing to raise the issue of standing at any point during the underlying administrative proceedings before the agency, the defendant is estopped from raising it now. Because, however, subject matter jurisdiction "addresses the basic competency of the court, [it] can be raised by any of the parties, or by the court sua sponte, at any time." (Internal quotation marks omitted.) *ABC, LLC* v. *State Ethics Commission*, 264 Conn. 812, 823, 826 A.2d 1077 (2003). Moreover, "subject matter jurisdiction cannot be conferred by waiver or consent . . . ." *Manning* v. *Feltman*, 149 Conn. App. 224, 236, 91 A.3d 466 (2014). Therefore, assuming, arguendo, that the defendant could have raised the standing issue during the administrative proceedings, the doctrine of estoppel does not apply.

[10] We note that the trial court did not conclude that Freese failed to plead facts establishing aggrievement in its memorandum of decision. That omission does not preclude us from doing so on appeal, however, because defects in subject matter jurisdiction "may be raised by a party, or by the court sua sponte, at any stage of the proceedings, including on appeal." (Internal quotation marks omitted.) *Ajadi* v. *Commissioner of Correction*, 280 Conn. 514, 533, 911 A.2d 712 (2006).

[11] We note that the plaintiffs in the present cases could have availed themselves of § 52-599 during the underlying administrative proceedings. Our Supreme Court has held that § 52-599 (b) applies to situations in which "an executor has entered the administrative proceeding by filing an amended complaint seeking any remedy to which the deceased complainant may have

been entitled . . . ." (Emphasis omitted; internal quotation marks omitted.) *Hillcroft Partners* v. *Commission on Human Rights & Opportunities*, 205 Conn. 324, 331, 533 A.2d 852 (1987); see also *Commission on Human Rights & Opportunities* v. *Greenwich Catholic Elementary School System, Inc.*, 202 Conn. 609, 613–14, 522 A.2d 785 (1987).

[12] The plaintiffs assert in their main brief that an administrative appeal pursuant to § 4-183 "is not a new proceeding, but the continuation of an extant proceeding." Regardless of whether that is true, however, the plaintiffs needed to establish their aggrievement in order to have standing to commence their appeals, which they failed to do.

[13] Our Supreme Court held in *Fairfield Merrittview Ltd. Partnership* v. *Norwalk*, 320 Conn. 535, 133 A.3d 140 (2016), that the term "mistake" as used in § 52-109 should be interpreted according to its ordinary meaning, namely, "error, misunderstanding or misconception." Id., 553 and n.21. In adopting that definition, the court disavowed its previous interpretation of "mistake" as "an honest conviction, entertained in good faith and not resulting from the plaintiff's own negligence," reasoning that such a definition was "too limiting and, practically, too difficult to apply, especially given the ameliorative purpose of § 52-109." Id., 553–54 n.21. We note that the trial court did not have the benefit of our Supreme Court's decision in *Fairfield Merrittview Ltd. Partnership* at the time it issued its memoranda of decision dismissing the plaintiffs' appeals. In any event, the change in the definition of "mistake" does not bear on our analysis of whether the court properly denied the plaintiffs' requests for substitution.

[14] Unless specifically regulated by statute, the time frame for taking appeals in Connecticut is governed by the rules of practice. See Practice Book § 63-1 (a).

[15] General Statutes (Cum. Supp. 1965) § 20-289 required the use of a citation commanding a party to appear rather than a summons, and provided in relevant part: "Any person aggrieved by an order made under this chapter may, within thirty days after the entry of such order, appeal to the superior court for the county in which he resides from such order, which appeal shall be accompanied by a citation to said board to appear before said court. Such citation shall be signed by the same authority and such appeal shall be returnable at the same time and served and returned in the same manner as is required in the case of a summons in a civil action. The authority issuing the citation shall take from the applicant a bond or recognizance to the state, with sufficient surety, to prosecute the application to effect and to comply with the orders and decrees of the court in the premises. Such application shall operate as a stay of such order pending the ultimate determination of the appeal, including an appeal to the supreme court, if any, unless otherwise ordered by the court. . . ."

[16] Moreover, we note that, subsequent to our Supreme Court's decision in *Bank Building & Equipment Corp. of America* v. *Architectural Examining Board*, supra, 153 Conn. 121, the legislature amended § 20-289 to eliminate the thirty day appeal period. Under the current version of § 20-289, "[a]ny person aggrieved by an order made under this chapter may appeal from such an order as provided in section 4-183."

[17] It bears noting that our rules of practice explicitly contemplate that the term "action" for purposes of substitution encompasses administrative appeals brought under § 4-183. Practice Book § 9-20, which is identical to § 52-109 in all material respects, provides: "When any *action* has been commenced in the name of the wrong person as plaintiff, the court may, if satisfied that it was so commenced through mistake, and that it is necessary for the determination of the real matter in dispute so to do, allow any other person to be substituted or added as plaintiff." (Emphasis added.) Practice Book § 14-6, which is entitled "administrative appeals are civil actions," provides: "For purposes of these rules, administrative appeals are civil actions subject to the provisions and exclusions of General Statutes § 4-183 et seq. and the Practice Book. Whenever these rules refer to civil actions, *actions*, civil causes, causes or cases, the reference shall include administrative appeals except that an administrative appeal shall not be deemed an action for purposes of section 10-8 of these rules or for General Statutes §§ 52-48, 52-591, 52-592 or 52-593." (Emphasis added.)