******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

APPENDIX

## CHARLES PRESTO, EXECUTOR (ESTATE OF WILLIAM PRESTO), ET AL. *v.* TEODOZJA PRESTO ET AL.*

Superior Court, Judicial District of Stamford-Norwalk
File No. CV-17-5016650-S

Memorandum filed February 14, 2018

*Proceedings*

Memorandum of decision on defendants' motion to dismiss. *Motion granted.*

*Charles Presto*, self-represented, for the plaintiffs.

*David D. Ryan*, for the defendants.

*Opinion*

GENUARIO, J.

I

INTRODUCTION

The plaintiff, Charles Presto, brings this action both in his individual capacity and in his capacity as executor of the estate of William Presto. According to the allegations of the complaint, the plaintiff is the executor of the estate of William Presto, who died on March 24, 1998. William Presto was the father of both the plaintiff and Robert Christopher Presto (Robert). The defendant Teodozja Presto (Teodozja) is the widow of William Presto and the stepmother of the plaintiff and Robert. She is also the mother of the defendants Andrzej Mazurek (Andre) and Stanislaus Mazurek (Stan). The plaintiff further pleads that William Presto left a will upon his death that was duly filed with the Greenwich Probate Court and pursuant to which the plaintiff was duly appointed as executor on March 31, 1998. There were no objections filed as to the will of William Presto by either Robert or Teodozja, but on August 14, 1998, Teodozja filed a notice of election, exercising her right to take her statutory share pursuant to General Statutes § 45a-436, as well as an application to appoint distributors. On December 6, 2005, an order was issued by the Greenwich Probate Court, a copy of which is attached to the complaint as exhibit C. A part of the order provided Teodozja with a life use of the property at 10 Carleton Street, Greenwich, subject to Robert's right to continue to live in the property. The order contained other provisions concerning the Carleton Street property as well. The plaintiff alleges that Robert left a will devising the property to Teodozja, notwithstanding the will of William Presto, which stated that ownership of the property should pass to William Presto's issue per stirpes if Robert predeceased Teodozja. Robert died on December 5, 2016, predeceasing Teodozja, and Robert's will was filed with the Greenwich Probate Court. There is no allegation that it has been admitted to probate. The plaintiff further pleads that objections to the will of Robert were filed by himself in the Greenwich Probate Court, asserting that there is a conflict as to how 10 Carleton Street should pass between the will of William Presto and the will of Robert Presto. The plaintiff pleads that the will of William Presto is clear that title should pass to the plaintiff because even if Robert's will is declared valid it cannot devise property beyond that which he was entitled to receive pursuant to the will of William Presto. The plaintiff in both his capacity as executor and as an individual seeks a declaratory judgment of this court that title to 10 Carleton Street should pass to him pursuant to the directions of the will of William Presto, regardless of the provisions of the will of Robert.

The plaintiff further alleges that the will of William Presto contemplated Teodozja and Robert continuing to live together at 10 Carleton Street and alleges that the conduct of Teodozja between August 9, 2016, and August 16, 2016, was in bad faith and unconscionable. The plaintiff pleads that on August 9, 2016, Robert was discharged from a nursing home where he had been treated for a urinary tract infection and, at the time, he was in good condition. The plaintiff pleads in some detail, which is not necessary to repeat herein, that Teodozja and Andre conducted themselves in a way so as to cut off Robert's contact with his family, friends and the outside world. And that by August 16, 2016, Robert was transported to Greenwich Hospital in a severely dehydrated state and was placed on a do not resuscitate status by August 23, 2016, as a result of the efforts of Andre and Teodozja. The plaintiff alleges that between August 9 and August 16, Andre and Teodozja allowed Robert's health to physically deteriorate, allowing him to become dehydrated, bedbound and uncommunicative for five days prior to calling 911. The plaintiff further alleges that though Stan was identified by the hospital as the person designated by the "family" to call the plaintiff, the plaintiff called Stan but Stan did not call back. The plaintiff alleges that Teodozja acted in an unconscionable manner and in bad faith and with reckless indifference to the life of Robert, and that such conduct hastened the death of Robert. The plaintiff alleges that the defendant Andre acted in an unconscionable manner and in bad faith with reckless indifference to the life of Robert, and that such conduct hastened the death of Robert and that the defendant Stan acted in a manner to isolate Robert by not putting the plaintiff on the list at Greenwich Hospital for purposes of contact. On September 5, 2016, Robert died from untreated pneumonia at Greenwich Hospital. He was no longer getting antibiotics.

The plaintiff seeks to have the December 6, 2005 order of the Greenwich Probate Court set aside and reevaluated, given the evidence of bad faith and unconscionable conduct of Teodozja. The plaintiff seeks to be appointed executor of the estate of Robert and to prevent anyone from the family of Teodozja Presto to become executor of Robert's estate. The plaintiff also seeks to have this court declare the will of Robert invalid, alleging facts that give rise to claims that Robert was not competent at the time he executed the will.

The defendants have moved to dismiss the complaint on the grounds that the plaintiff has not alleged a cognizable claim regarding either title to the property of Robert's estate or the validity of Robert's will or who should be the executor of Robert's estate and that said issues are not ripe for determination; that the appeal of the December 6, 2005 probate decree is outside the time period in which to file such an action pursuant to

the applicable statute of limitations, General Statutes § 45a-186; and the plaintiff's allegations of bad faith and unconscionable conduct are premised on the purported Probate Court appeals, which are not ripe for determination.

Because the court agrees that the issues raised by the plaintiff's appeal are not yet ripe for determination, the court grants the defendants' motion to dismiss this action.

II

DISCUSSION

"A motion to dismiss shall be used to assert: (1) lack of jurisdiction over the subject matter . . . ." Practice Book § 10-30 (a). "[A] motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Internal quotation marks omitted.) *Santorso* v. *Bristol Hospital*, 308 Conn. 338, 350, 63 A.3d 940 (2013).

"[J]usticiability comprises several related doctrines, namely, standing, ripeness, mootness and the political question doctrine, that implicate a court's subject matter jurisdiction and its competency to adjudicate a particular matter." (Footnote omitted.) *Office of the Governor* v. *Select Committee of Inquiry*, 271 Conn. 540, 569, 858 A.2d 709 (2004). "Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . (4) that the determination of the controversy will result in practical relief to the complainant." (Internal quotation marks omitted.) Id., 568–69.

"[T]he rationale behind the ripeness requirement is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . . Accordingly, in determining whether a case is ripe, a trial court must be satisfied that the case before [it] does not present a hypothetical injury or a claim contingent upon some event that has not and indeed may never transpire." (Internal quotation marks omitted.) *Cadle Co*. v. *D'Addario*, 111 Conn. App. 80, 82–83, 957 A.2d 536 (2008). In *Cadle Co.*, the Appellate Court affirmed the trial court's dismissal of the plaintiff's claims where the "plaintiff's injury [was] contingent on a determination of the priorities of the creditors of the decedent's estate, the final settlement of the estate and the absence of sufficient funds in the estate to satisfy the plaintiff's claim. In other words, any injury sustained by the plaintiff stemming from the allegations of the defendants' misconduct are, at this point, hypothetical." Id., 83.

In the case at bar, there is no allegation that the

Probate Court has admitted the alleged will of Robert to probate, or determined its validity, there is no allegation that the Probate Court has appointed an executor, and there is no allegation that the Probate Court has made a determination that Robert owned an interest in the property located at 10 Carleton Street sufficient to allow him to convey the same property by will to Teodozja. Those issues are still properly pending before the Greenwich Probate Court and, in the first instance, need to be decided by the Greenwich Probate Court.

This case is similar to the case of *Solon* v. *Slater*, Docket No. CV-14-6023538-S, 2015 WL 3651789 (Conn. Super. May 12, 2015) (*Heller, J.*). In dismissing the Superior Court action, the court noted that all of the property that the plaintiff argued should have passed to her upon the decedent's death was presently subject to the jurisdiction of the Probate Court. Similar to the *Solon* case, the property which is the subject of this case, to wit, 10 Carleton Street, is currently subject to the jurisdiction of the Greenwich Probate Court. Should the Probate Court sustain the plaintiff's objection to the will of Robert and determine that the decedent died intestate, the plaintiff may assert his claimed rights to the property within the Greenwich Probate Court. If the plaintiff disagrees with the decision of the Probate Court in that regard, the plaintiff may take an appeal in timely fashion, which appeal will be handled in accordance with law. If no appeal is taken, the plaintiff's claims will ultimately be barred.

Even if the will is admitted to probate, that does not necessarily mean that the Probate Court will decide that Robert inherited fee simple title to 10 Carleton Street pursuant to the December 6, 2005 order (as opposed to some lesser interest). The Probate Court may be required to review that order to determine what interest Robert inherited pursuant to the will of William Presto. Until such time as the Probate Court renders that decision, the plaintiff's claims in the Superior Court are not ripe.

Moreover, the allegations of the complaint relating the alleged bad faith and unconscionable conduct of the defendants during the periods subsequent to August 9, 2016, which allegedly hastened the death of Robert can only be construed as allegations of breaches of duties by the defendants to Robert. Until such time as an executor or other fiduciary is appointed to administer the estate of Robert, this claim by the plaintiff is not only premature and not ripe, but asserts claims that the plaintiff has no standing to make. Claims of wrongdoing and breaches of duty to the decedent must be brought by the decedent's fiduciary. The plaintiff's brother acting in his individual capacity has no standing to assert such claims. See *Freese* v. *Dept. of Social Services*, 176 Conn. App. 64, 78–79, 169 A.3d 237 (2017); *Geremia* v. *Geremia*, 159 Conn. App. 751, 781, 125 A.3d

549 (2015); *Wells Fargo Bank, N.A.* v. *Treglia*, Docket No. CV-06-5001250, 2011 WL 3672037, \*3 (Conn. Super. July 25, 2011) (*Hon. Alfred J. Jennings, Jr.*, judge trial referee).

### III

### CONCLUSION

While the plaintiff alleges facts and proceedings which raise both interesting and litigable legal issues relating to the title of 10 Carleton Street and serious allegations of misconduct on the part of the defendants toward Robert, they are not ripe for adjudication in the Superior Court. For all these reasons, the defendants' motion to dismiss is granted.

\* Affirmed. *Presto* v. *Presto*, 196 Conn. App.    ,    A.3d    (2020).